UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DUNBAR SAINT PAUL, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>DIGISTORE24, INC., a Delaware corporation,<br><br>        Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Dunbar Saint Paul ("Plaintiff" or "StPaul") brings this Class Action Complaint and Demand for Jury Trial against Defendant Digistore24, Inc. ("Defendant" or "Digistore24") to stop the Defendant from violating the Telephone Consumer Protection Act by sending telemarketing text messages to consumers without consent, including those who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff StPaul, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Dunbar StPaul is a resident of Metairie, Lousiana.

2. Defendant Digistore24 is a Delaware registered corporation headquartered in St. Petersburg, Florida. Defendant Digistore24 conducts business throughout this District and throughout the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Digistore24 maintains an affiliate sales network that connects sales agents with products they can market and sell for commissions.[3]

17. Meticore is a weight-loss product that Digistore has made available to its sales agents, offering an 85% commission rate for each sale of Meticore:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.digistore24.com/



18.     Meticore can be purchased only[5] through MyMeticore.com, a website owned and operated by Digistore24.[6]

19.     Digistore24 recruits sales agents to sell Meticore through eosoffer.com:



---

[4] https://www.digistore24.com/en/marketplace/section15
[5] https://www.discovermagazine.com/sponsored/meticore-scam-controversy-fake-reviews-and-user-complaints
[6] MyMeticore.com
[7] https://eosoffers.com/offers/meticore

20. Plaintiff and his attorneys do not know if Meticore is owned and produced by Digistore24 or another entity.

21. The Federal Communication Commission has instructed that corporations such as Digistore24 may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

22. Digistore24 profits from every sale that is generated by its affiliate network to sell the Meticore product.

23. Meticore sales agents generate business on behalf of Digistore24 using marketing practices that include telemarketing by means of sending text messages to consumers throughout the U.S.

24. Unfortunately, these text messages are being sent to consumers without their express written consent, who do not have an existing business relationship with Defendant, and to consumers who registered their phone number on the DNC.

25. For example, in Plaintiff StPaul's case, Defendant sent multiple unsolicited text messages to his number registered on the national do not call registry.

26. In response to these text messages, Plaintiff StPaul files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF STPAUL'S ALLEGATIONS

27. Plaintiff StPaul registered his phone number on the DNC on December 11, 2004.

28. Plaintiff StPaul's phone number is not associated with a business and is used for personal use only.

29. On December 14, 2020 at 2:53 PM, Plaintiff StPaul received an unsolicited text message from, or by a Digistore24 sales agent using phone number 719-838-4282 to his cell phone:



30. The text message shown above is directed to somebody named Natalie. Plaintiff does not know who Natalie is.

31. When https://bhirk.com/2YG is visited, it forwards directly to MyMeticore.com/science[8] where Defendant is selling Meticore bottles for $59 per bottle.

32. On December 15, 2020 at 8:31 AM, Plaintiff received a second unsolicited text message from Digistore24 or a Digistore24 sales agent, this time using phone number 707-884-0036 to his cell phone:

---

[8] Based on an investigation conducted using Charles, a link tracking program



33. The text message shown above is directed to somebody named James. Plaintiff does not know who James is.

34. When https://otedn.com/akB is visited, it forwards directly to MyMeticore.com/science.[9]

35. On December 15, 2020 at 5:42 PM, Plaintiff received a third unsolicited text message from Digistore24 or a Digistore24 sales agent, this time using phone number 719-931-5174 to his cell phone:



36. When https://rotbq.com/hdj is visited, it forwards directly to MyMeticore.com/discover.[10]

---

[9] Based on an investigation conducted using Charles, a link tracking program
[10] Based on an investigation conducted using Charles, a link tracking program

37. On December 17, 2020 at 8:25 AM, Plaintiff received a fourth unsolicited text message from Digistore24 or a Digistore24 sales agent, this time using phone number 760-760-0074 to his cell phone:



38. The text message shown above is directed to somebody named Justin. Plaintiff does not know who Justin is.

39. When https://tednw.com/61 is visited, it forwards directly to MyMeticore.com/science.[11]

40. None of the text messages that Plaintiff received provide instructions on how to opt-out of receiving additional text messages.

41. Each website URL that Plaintiff was directed to visit is a shortened URL and each URL links expands to MyMeticore.com[12] where Defendant is selling Meticore bottles for $59 per bottle or $234 for 6 bottles.

42. Plaintiff has never provided Defendant with consent to send him unsolicited text messages or calls to his cell phone.

43. The unauthorized solicitation text messages that Plaintiff received from Digistore24, as alleged herein, have harmed Plaintiff StPaul in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the

---

[11] Based on an investigation conducted using Charles, a link tracking program
[12] http://www.checkshorturl.com/expand.php

wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

44. Seeking redress for these injuries, Plaintiff StPaul, on behalf of himself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing text messages to cellular telephones that are registered on the DNC.

## CLASS ALLEGATIONS

45. Plaintiff StPaul brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claim they supposedly obtained prior express written consent to text Plaintiff, (b) they did not obtain prior express written consent, (c) they obtained the person's telephone number in the same way they obtained Plaintiff's telephone number.

46. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff StPaul anticipates the need to amend the Class definitions following appropriate discovery.

47. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

48. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Digistore24 systematically sent multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to send the text messages;

(b) whether Defendant Digistore24's text messages to Plaintiff and other consumers were sent for telemarketing purposes;

(c) whether Defendant's conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

49. **Adequate Representation**: Plaintiff StPaul will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff StPaul has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff StPaul and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff StPaul nor his counsel have any interest adverse to the Class.

50. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff StPaul. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
Telephone Consumer Protection Act
(Violation of 47 U.S.C. § 227)
(On Behalf of Plaintiff and the Do Not Call Registry Class)

51. Plaintiff StPaul repeats and realleges paragraphs 1 through 50 of this Complaint and incorporates them by reference.

52. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

53. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

54. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

55. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

56. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

57. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff StPaul individually and on behalf of the Class, prays for the following relief:

58. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff StPaul as the representative of the Class; and appointing his attorneys as Class Counsel;

59. An award of actual and/or statutory damages and costs;

60. An order declaring that Defendant's actions, as set out above, violate the TCPA;

61. An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

62. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff StPaul requests a jury trial.

    **DUNBAR SAINT PAUL**, individually and on behalf of all others similarly situated,

DATED this 13th day of January, 2021.

    By: /s/ Stefan Coleman

    Stefan Coleman (FL Bar no. 30188)
    law@stefancoleman.com
    LAW OFFICES OF STEFAN COLEMAN, P.A.
    201 S. Biscayne Blvd, 28th Floor

Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Trial Counsel*

*Attorneys for Plaintiff and the putative Class*